Good morning, honors. My name is Robert Gombinen, and I represent the appellant Jeffrey Hein. I would like to reserve two minutes for a couple of fun nights. You may. The search affidavit in this case includes crucial information which was conceitedly illegally obtained. It also omits equally crucial information about the key witness's lack of honesty. And for those two reasons, the search here offends the Fourth Amendment. Does it depend upon how we categorize the source of the information, whether we consider the person to be a victim versus a confidential informant? Should that inform our analysis? It should inform your analysis, but there is no simple dichotomy between victim on one hand and confidential informant on the other. You're not denying that the police had probable cause to arrest your client for the sexual assault and battery of the victim, are you? No, your honor. He was never convicted of that, but I'm not denying there was probable cause to arrest the victim. So in that respect, she would be a classic victim of at least that offense? Of that offense. She was, however, as I think the evidence makes clear, not a victim in any way of anything involving a weapon or any of the other items that were supposedly contained in the briefcase. Is it completely irrelevant to a crime of violence that the victim knows that the suspect was armed and that a weapon is present in the room before the crime of violence occurred? Well, it's irrelevant in this case because we know from the statement the misdemeanor made that the weapon was, she never alleged that the weapon had anything to do with the offense, that she was threatened by it. It just didn't play a part in the sexual assault. So a magistrate would err if a magistrate concluded based on the knowledge by the victim that a weapon was in the room and in the possession of the assailant, that it was in any way connected with the crime that he was arrested for. That would not be a common sense inference that a magistrate might make? It might be a common sense inference if you didn't know anything about the particular facts of the case, but here the victim for purposes of sexual assault crime did give a lengthy written statement in which it is, at which the police were in possession of prior to issuance or drafting of the warrant, which made it entirely clear that the weapon didn't have anything to do with the assault. And the important thing is that... Did she see the weapon before he assaulted her? According to her statement, she saw it at some... She doesn't really give a chronology, but I think you can infer that she saw it at some time prior to the assault. But that's... Well, I'm not saying that's entirely irrelevant. What's important is that for the magistrate to make a common sense determination of whether there's probable cause, he has to be in possession of the salient facts. And one of those facts is that the person who drafted this warrant was the same officer who had investigated and referred for prosecution, Ms. Dootworth, for a quintessential crime of dishonesty, which is passing bad checks. And the judge ... The district court judge himself found that Detective Moore, at the time that he drafted this warrant, was convinced of her commission of a crime of dishonesty. That's a quote from Judge Robart's findings. Now... Yeah, but the law surely protects even people who have passed bad checks, doesn't it? Absolutely. But what we're talking about is whether or not there is probable cause to... Well, he'd seen the marks on her neck. Your Honor, if we were talking about whether or not Mr. Hines should be arrested for a sexual assault crime, I would... I'm not saying that someone who passed bad checks can't be the victim of a crime. Right, but in the process of telling the officer about that, she also gives him information about the gun. Well, so the officer is supposed to say, well, I can separate the sexual assault and I'm going to separate that from the fact that he also possessed a weapon, which even though he didn't use it on you, might have been used to intimidate you, but I have to discount that because you passed bad checks in the past? This is pretty convoluted, isn't it? It's not really convoluted at all, actually. All the officer has to do is... The magistrate... He's seeking a search warrant. He's trying to establish probable cause. All the officer has to do is to let the magistrate know that here are the facts, and one of the facts is that the person who is making these allegations about a gun, a gun that she's not claiming was used on her in the assault, and also making allegations about drugs, is a person who I have personally investigated and referred to prosecution for a crime of dishonesty. That should have been in the works. Do you want us to write an opinion that basically would say that any time the police take a case, they must conduct a criminal history check of the victim, and if they're going to try and seek a search warrant based on probable cause, that they must set forth in the affidavit for probable cause the criminal history of the victim who is the source of the information in order to present to a neutral and detached magistrate all the information that he or she needs to pass upon probable cause? No, I don't want you to write that opinion. What I would like you to write, however, is an opinion that says when the detective who is drafting the warrant does know, as is the case here, he doesn't have to do any investigation. He knows because he's investigated the witness previously. When he is actually in possession of that information, and it's information that is relevant, completely relevant to an assessment of the person's veracity, he should include the information under those circumstances. I would agree with you if Aguilar and Spinelli were still the prevailing standard with regard to assessing probable cause, but doesn't Illinois v. Gates change the analysis that the Supreme Court tells us we must apply? It changes it, but not in a way that excuses the police from omitting information which is relevant to the Gates test, where it's true you don't have that neat little two-part test anymore, but Gates still says you're supposed to include the circumstances that are relevant to probable cause, and this is a relevant fact. But to go back to Judge Bivey's line of questioning, why can't the officers conclude based upon the corroboration from their investigation of the crime scene that the report by the victim is worthy of belief because they saw the red marks on her, they found a metal briefcase that matches the description that the victim provided, and under Illinois v. Gates, we can now lay heavier emphasis on the first prong and the reliability of the source of the information is not as important as it was under Aguilar-Spinelli. Isn't that the correct analysis? Your Honor, I don't like to disagree with you, but I don't think it's the correct analysis. Well, it's your job. You can disagree all you want. I get the final say, but you can't disagree. Well, I understand that. I'm sure you get the final say. The reason that it's not the case is that we're trying to find out if an item is located in a specific place. We're not investigating a sexual assault crime. We're investigating an entirely different offense. And there were things they could have done to corroborate Ms. DeWert's statement, which would have included having her make a statement under oath in which she was questioned about where this supposed gun was, getting a drug dog to see if there's a drug dog alert to the briefcase because she says there's drugs in the briefcase, going into the hotel room to see is there a broken light because she says there's a broken light, that Mr. Hind broke a light. They could have done all those things. They didn't do anything to corroborate her statement. You're not suggesting a victim of a sexual assault should be necessarily placed under oath? Your Honor, I am suggesting they should be. I'm not suggesting... She's a victim. Your Honor, the problem is we're talking about victim. There's two separate things here. I am not contesting in any way the probable cause as to the sexual assault crime. I'm contesting the probable cause as to the entirely separate matter of whether there is a gun in a briefcase that is possessed by Mr. Hind. Doesn't it help the fact that all of these issues were brought up to the district court and the district court held an evidentiary hearing and the same arguments you're making about how come you didn't say about this were brought up to the district court and the court had an opportunity to hear the witnesses and evaluate whether it was important to them as to whether these facts were included or omitted? Well, first, the district court actually based its assessment largely on the Payton-Soriano case. If you read the court's findings, the district court said that Payton-Soriano said that you don't have to talk about a crime of dishonesty in a warrant. But unfortunately, the district court didn't misread Payton-Soriano because Payton-Soriano is a case in which the Ninth Circuit said that when a person makes statements against his penal interest, that can overcome the fact that he has also been involved in crimes of dishonesty, which is of course not the case here. There were no statements made against penal interest. So I don't think that's really the, the district court didn't make those findings. But the declarant in that case was basically a classic informant, correct? Not a victim of a crime. I mean, now we're back to Aguilar and Spinelli, that an admission made against interest, against penal interest by somebody who's been involved in criminal behavior is presumed to be reliable for that reason alone. Here we're relying on the statements of a victim about circumstances surrounding the sexual assault, which lead the police to a different crime. But I go back to the question I asked you at the beginning of your argument, and that is, does that transform the victim now into an informant to whom we must apply the Aguilar-Spinelli reliability test? The problem here, I think you're trying to create a, just a, a bright line between victim on the one hand and confidential informant on the other. Well, I'll agree with you that she fits somewhere in between, but she's clearly a victim of a sexual assault. Well, it didn't arise during the commission of that offense. It only, it's only related in the sense that she says that while they're in a consensual situation in this hotel room, she says that she sees a gun. Okay, now that, she doesn't say that the gun was used to intimidate her. She doesn't say that the gun was used in the sexual assault. In fact, if you read her written statement, she doesn't even say she ever saw the gun put in the briefcase. And now, the question is, given those facts, isn't the magistrate entitled to know something about this person's background, which the detective knows for sure, because he's the one who's charged her with being a forger and a caster of bad checks. That's all I'm saying. That's asking too much. I've exceeded my time. You have, and I'll give you a minute in rebuttal, but let me hear, let's hear from Mr. Redke. Thank you very much. See what the government has to say in reply. Good morning, Your Honor. Bill Redke, appearing on behalf of the United States. This may not have been a model search, but that does not make it an unconstitutional search. A probable cause is simply- You're excluding the search of the car, which you concede was unconstitutional. It was unconstitutional, and we conceded that right at the beginning. And that all the evidence seized from the car, in particular the magazine loaded in, a magazine should be excluded from consideration for that reason. And probable cause, it's important to bear in mind, I think, is simply a fair probability that evidence for crime would be found in a particular place. And of course, as the court has pointed out, the test is no longer Aguilar-Spinelli, although that is a helpful framework for analysis. The test is totality of the circumstances. And with respect to the omission of the victim's, I don't want to call it criminal history exactly, but allegations of criminal conduct involving fraud, should have been included in the affidavit as a matter of practice, not necessarily as a matter of law. It is important, of course, for magistrate judges to know as much as they can about people who give information about crimes. But the fact that that information is desirable in an affidavit does not mean that it was necessary in an affidavit when we consider the totality of the circumstances, as the court has pointed out. Mr. Gombiner would seem to ask the court to completely disentangle the facts of this case and say that the sexual assault and the physical assault that accompanied it were completely separate from the gun itself, and to ask the court to make determinations of the victim's credibility with respect to the gun without any regard to the information that she gave about the rape and the physical assault, which counsel readily acknowledges there was probable cause for the defendant's arrest on that part of the case. We say, in essence, that you have to consider the totality of the circumstances, as Illinois v. Gates teaches us, and that you cannot separate the fact of the sexual and physical assault on the one hand from the likelihood that there will be a gun on the other hand. I would like to touch briefly on the question of whether the gun played any role in the sexual assault. And I mention it only because Mr. Gombiner stresses that she never said that the gun was part of the sexual assault. And that is true. She never actually said that. But her written statement, if the court reads it closely, does not say the opposite either. It does not say that the gun had nothing to do with it. And, Judge Tallman, as you pointed out, it's just a common-sense, everyday experience conclusion that if she knew there was a gun in that briefcase, that she would probably be more likely to submit to the sexual assault than she might have otherwise. And so the gun and the sexual assault and the physical assault, while we cannot say they are necessarily intimately related, are certainly connected. So with respect to the victim's credibility, while it would have been desirable to include evidence of her involvement in the fraud scheme, it was not necessary to do so. And when we assess the victim's credibility in this case, I think it's important to ask some rhetorical questions. What advantage would she have gained from giving a false police report about that gun, knowing as that she surely must have, that the police were going to search that briefcase, and if they found no gun, she would be a liar. They could also have then searched the hotel room, the premises where he might have sloughed the gun, and they would have found her to be a liar, which would not have advanced her case on the sexual and physical assault. In fact, it would have diminished her credibility. There's at least some suggestion that she could have, that she might have been trying to frame him to get revenge for their breakup, for the way he treats her, for something else. It might not be a big stretch to say she had an incentive to embellish this. He was an ex-boyfriend. He rapes her on this night, and to gain additional trouble might have been a small step. We can't exclude that as a possibility, but I think the more reasonable response would be simply that she was probably concerned about the police opening the briefcase, and she wanted them to know that he had a gun. But we have to also consider her relationship with him. It was unlike the cases cited by the defense. They were on good terms when they went to that motel room the night before, and it was only at the last minute that things went bad when the defendant became agitated and assaulted her. Up to that point, she had no reason at all to dislike him or to set him up or to frame him or to, as you say, embellish or gild the lily here. She had no motive to do that until the offense. There was abundant evidence of that sexual and physical assault. She didn't need to gild the lily. And in fact, if she had thought the process through and done a risk-benefit analysis, she could have thought, if I lie to the police about this gun and they don't find a gun, one, they could throw out my sexual and physical assault case, but they could also charge me with obstructing or filing a false police report. So in a sense, to have lied would have been a statement against penal interest. And so her credibility should be enhanced by those considerations. So if the court has any questions, I'd be happy to respond. Well, I want to move on to the illegal search of the car. It was confusing to me in reading the testimony of Detective Moore as to whether or not he decided to seek a warrant before the patrol officer's reports were transcribed. So did he know at the time he decided to seek a warrant that they had found the clip and rounds of ammunition in the car or not? He did not. The testimony is, I believe it's on Excerpt of Record, page 78, that he did not know when he decided to seek the warrant that the car search had been conducted or that anything had been found. Ultimately, when he started writing the warrant, he had before him the written reports, which included reference to the car search and the fruits of that search. But if the important question is what prompted him to get the warrant, and I think that is the important question, the answer is it was the report of Officer Sweeney, who was relating what the victim witness had said, was that there was a gun in the briefcase. He did not know when he made that crucial decision at that point in time that there had been a search of the car and that relevant evidence had been found. And so the answer to the question is, I hope that clarifies the record, that he did not know at the time he decided to seek the warrant, nor did the police officers at the scene when they decided to look in the briefcase. Counsel, I think you've been very careful to say, at the time that he decided. That suggests that this was a decision that was made in his head and not one that was made on paper. Yes. So you're telling me at the time that he actually filled out the warrant, he did know the results of the illegal car search? He did. He did. And, in fact, included it in the affidavit of probable cause. Indeed. Because it was in the written report of one of the officers. But if I get the thrust of the rulings of law on this, the question is what prompted him to do it? What made him make the decision? It was at the time that the officer decides to apply for the warrant, rather than the time he applies for the warrant and at the time, presumably, that the judge approves the warrant. How do we separate out what the judge is thinking? I think when we use the word prompt, it suggests an initial decision, something at the starting of a process, what prompts it, not what fortifies it as you go through or what sustains it as you go through or what reinforces your initial decision, but what prompts it. And if we look at that, if that's the correct interpretation of the word prompt, it's what made him decide that he wanted to get a warrant. And I suggest the answer is... How do we know what moved the judge to approve the warrant, though? Well, I guess we have... You have a warrant that has some information that's obtained illegally and some that's who's approved it on, presumably, on the basis of everything that you've supplied to it. And that's a difficult question. I don't know how we get in the mind of the district court judge in Saskatchewan County who made that decision that day, what prompted his decision. But I think the question... Doesn't the officer's motivation become irrelevant at this point, since we've got a judge who's got tainted information and good information before him? Well, I think it's a two-pronged inquiry. I think one, what prompted the police to get the warrant, and then, if you will, whether it played any role in the judge's decision to grant the warrant. And obviously, we can't know that without reading the judge's mind. But clearly, it would seem that there's sufficient evidence in the judge's mind, with respect to her report of the rape and the sexual assault, to make a decision of whether there was probable cause, even without evidence of that gun. Or perhaps, said another way, it's immaterial to the finding of probable cause. That is, the evidence that was found in the car. The judge could have made that decision entirely without that information and still found abundant probable cause. Doesn't it help you that the district court then clearly said on the motion to suppress that he took out the language regarding the improper car search? So you're not going to call the judge as a witness to say, now, what were you thinking when you approved this search warrant? You're going to exclude the improper material and say, does it stand on its own based on probable cause under the totality of circumstances? And the district court clearly said, I'm denying the motion to suppress because I'm excluding the improper information and relying on the totality of circumstances to find probable cause in any event. Yes. And I think that's absolutely correct. And I think further, Judge Biden, in response to your question, the most important question is whether that now excised information made a difference in the judge's determination of probable cause. And in that particular case, in the judge's mind, we may never know. But the standard of review before this court is de novo on the question of whether that omission was material to the decision of the determination of probable cause. And on the facts in this record, this court can and should make that finding de novo that there was probable cause. Can we make it, Mr. Redke, or under the authority of U.S. v. Duran, Orozco, do we have to remand it to the district court to make a specific finding to that effect? I think the court does not have to remand it. The record, where the record is clear enough and where all the facts are brought out in the record, this court can make that decision de novo. So you would, I'm looking specifically at some language, at 192 F. 3rd, 1281. And in that case, Judge Noonan, writing for our court, said, the government, however, does have a further hurdle to surmount. The agents might not have applied for a search warrant if they had not made their, what was unlawful, warrantless search at the back of the house and incorporated its fruits in the application for a warrant. We are not in a position to determine what they would have done. That is the job of the district court, which, after an evidentiary hearing, must make an explicit finding on this question. And then we remand it for that hearing. How would you distinguish the holding of Orozco, Duran, from this situation? I would distinguish it in the sense that in that case, there was not a sufficient record for that court to decide. In this case, there is. If this court were to remand it to Judge Robart, he would simply look at the transcript of the findings of fact in this case and say, all right, what was obvious and, in fact, inescapable conclusion from my findings before, I now explicitly announce. So it would be a futile gesture, I suggest, to send it back to the district court at this point, given the breadth and depth of the record on that particular point. All right. Thank you, Mr. Redfield. I appreciate your time. Mr. Gromit, I'll give you a minute in rebuttal. Yes, very briefly. Let me respond to the court's last set of inquiries. First, Murray says there's a two-part test, which is higher authority because it's the Supreme Court. It says there's a two-part test. We try to do what they tell us to do. It's hard sometimes. Sometimes it's hard, right. In any event, Murray says it's a two-part test. First, that it's the government's burden to show that the illegally obtained information did not affect the magistrate's determination. And second, that the police would not have sought the warrant without the illegally obtained information. Now, let me just point to two things here. First, the affidavit does not seek any evidence about drugs. They had information about drugs, too, from Pott, Mr. Ward. What they didn't have was corroborating information. In my mind, that is a smoking gun as to the importance of the illegally obtained evidence from the car, which is obviously by far the best evidence that there's a gun. If you've got a gun case in ammunition, it's kind of like a dumb moment to say, well, maybe there's a gun around. But he sought a warrant for the gun. I thought your argument was, why didn't they ask for the warrant to include authorization to search for drugs? Well, what I'm saying is, the reason that they seek to go for the gun is because they've got this airtight corroboration. And they don't have that for the drugs. And that's, I think, is a significant difference. But Judge Robart did make a determination, did he not, that excising the evidence from the search of the car, there was still sufficient evidence to establish probable cause to look for a weapon? He did make that determination. And I think the court can do a de novo review of that. And I'm saying that I disagree with that determination. I think that this court should as well. But the second point I want to make is that we should review it de novo and decide it the other way, or that we have to remand it? Well, you do have to remand it. Why? OK, because there's a, Detective Moore himself testified that prior to submitting the warrant to the judge, he consulted with a deputy prosecutor. And obviously, he would pay attention to the deputy prosecutor. Even if it's the government's burden here, the government did not call that prosecutor. I think it's extremely important to have a hearing to say, would the prosecutor have said, you've got enough for a warrant, if he had known that all the evidence taken from the cart, which the prosecutor was clearly aware of, was illegally obtained? But in the face of the district court's factual determination, and I guess it's a mixed question of law and fact, that without the tainted information, there was sufficient evidence to establish probable cause, coupled with Detective Moore's testimony that he'd made the decision to seek the warrant, without knowing about the tainted evidence, doesn't that get the government there? I don't think so. I think Judge Bybee was on the right track about this. I think the question is, what would happen if, before the affidavit actually gets submitted, that's the relevant part, not some inchoate thought in the detective's brain about, well, maybe I'll get a warrant. But we need to know, would he have actually submitted that affidavit to the judge, if the prosecutor, for example, who had reviewed the proposed search warrant affidavit, had known that the evidence that was in there about the gun case and the ammunition was illegally obtained? Doesn't that go back to, though, you have testimony from a victim of a sexual assault, you know that the person's a felon. The victim says, I've just been raped. This guy's a felon. The police know, this guy's a felon, and I've seen a gun. Isn't that enough? What purpose would we serve in then sending it back to the district court, who already said, I'm excluding any information about the illegally obtained search, and couple that with Officer Moore, who said, I made the decision to go get a search warrant before I even knew anything about the illegal search? Well, Officer Moore did say that that's what he was doing. But when you look at Officer Moore's testimony, before he submits the warrant, he reviews the affidavits of the police officers. No, his testimony was that they were still being, that the reports were still being transcribed, and that it wasn't until he actually started preparing the affidavit in support of the them in preparation of the affidavit. I think that is pretty clear. I thought that's what I said. Before he actually drafts the warrant, he reviews the police officers. As he's drafting it. But the point is, he decided he was going to do it before he saw the officer's incident report. And then he also says that he consults and shows his proposed affidavit to a prosecutor. We have no testimony from the prosecutor, but what he would have done had he known that the evidence... But what do we care? I mean, we can make a judicial determination, which Judge Robart did, excising the tainted information and making a determination as a matter of law as to whether the remaining allegations of fact are sufficient still to establish probable cause. And the district court said they were. Because I think that's what you've got to do under Murray. You would really reduce Murray to the second prong of the Murray test to, I mean, essentially impossible to meet one if all a police officer had to do was just come and say, after the fact, hey, no matter what we got out of this illegally obtained stuff, I would have still sought the search warrant. Especially because we know here that when he finds out about the drugs, he doesn't... And he was never asked about... I asked him about this. I asked him, did you... Are drugs illegal? He said, yes. Did you ask for a search warrant for that? No. What's the difference? The difference is they don't find anything in the car about drugs. They do find something in the car about the gun. Or is it an easier case, going in possession of a firearm? Well, it's a pretty simple case if you've got somebody with a briefcase and there's drugs in the briefcase. I mean, that's... And you seized the drugs in plain view because the firearm warrant gave you the right to look there. I think we understand your position. And I've let you both go way over, but it was well argued and I think your argument has helped us. So, thank you. Thank you. The case just argued is submitted. The next case on the calendar, Sandra Kelly v. The United States, is submitted on the briefs. We will now hear argument in Merrick Mason v. The United States.
judges: Ca09 Tallman, Bybee, Huff